UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

──────────────────────────

WAYNE D. SNYDER,

                      Plaintiff,

          -vs-                          **No. 1:15-CV-00359 (MAT)**
                                        **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                      Defendant.

──────────────────────────

## I.    Introduction

        Represented by counsel, Wayne D. Snyder ("plaintiff") brings
this action pursuant to Titles II and XVI of the Social Security
Act ("the Act"), seeking review of the final decision of the
Commissioner of Social Security ("the Commissioner") denying his
applications for disability insurance benefits ("DIB") and
supplemental security income ("SSI"). The Court has jurisdiction
over this matter pursuant to 42 U.S.C. § 405(g). Presently before
the Court are the parties' cross-motions for judgment on the
pleadings pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure. For the reasons discussed below, the Commissioner's
motion is granted.

## II.  Procedural History

        The record reveals that in September 2012, plaintiff (d/o/b
February 20, 1978) applied for DIB and SSI, alleging disability as
of January 2009. After his applications were denied, plaintiff
requested a hearing, which was held before administrative law judge
James G. Myles ("the ALJ") on October 10, 2013. The ALJ issued an

unfavorable decision on October 23, 2013. The Appeals Council denied review of that decision and this timely action followed.

## III. **The ALJ's Decision**

Initially, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. At step one of the five-step sequential evaluation, see 20 C.F.R. §§ 404.1520, 416.920, the ALJ determined that plaintiff had not engaged in substantial gainful activity since January 1, 2009, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: spinal cysts, right wrist fracture residuals, chronic upper back pain, and headaches. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment.

Before proceeding to step four, the ALJ determined that, considering all of plaintiff's impairments, plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he was limited to lifting and carrying 15 pounds occasionally and 10 pounds frequently; "after standing/walking for 30 minutes, [he] must be provided a two minute rest, or he must be given the option to work seated, and after being seated for more than 30 minutes, [he] must be permitted a stretch break at the work station"; he was limited to only occasional foot controls; he was unable to climb ladders, ropes, or

scaffolds, but could perform other postural activities occasionally; and he was limited to only occasional overhead reaching and frequent handling/fingering with his right upper extremity. T. 14.

At step four, the ALJ found that plaintiff could not perform past relevant work. At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which plaintiff could perform. Accordingly, he found that plaintiff was not disabled.

## IV.  Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

### A.  RFC Finding; Weight Given to Treating Physician's Opinion

Plaintiff argues that the ALJ's RFC finding was unsupported by substantial evidence, contending that it was not based on any medical opinion in the record. In a related argument, plaintiff contends that the ALJ erred by "selectively adopting" portions of

3

plaintiff's treating neurologist's opinions, rather than adopting those opinions in their entirety.

Plaintiff's medical record, which is relatively sparse, indicates that he treated conservatively for back pain at Dent Neurological Institute ("Dent"), beginning in approximately October 2009. The most recent MRI testing, performed in November 2011, revealed two epidural cystlike masses posterior to the thecal sac, "most likely represent[ing] epidural cysts," and a wide-based disc protrusion without foraminal or spinal stenosis at T6-7. T. 253. These cysts were described as "general[ly] benign" by treating neurologist Dr. Peter Kovacs. T. 256. Dr. Kovacs noted that plaintiff wished to have the cysts removed "[s]ince they [had] been causing problems," and noted that he would be referred to neurosurgery. Id. However, the record indicates that despite multiple referrals, plaintiff never scheduled the surgery. Dr. Kovacs also noted that plaintiff's thoracic disc bulge was "of little clinical significance." T. 255.

Clinical findings on physical examinations were generally unremarkable, although plaintiff occasionally exhibited decreased range of motion ("ROM") of the spine and tenderness to palpation. During his treatment at Dent, plaintiff treated primarily with neurologist Kenneth Murray and nurse practitioner ("NP") Christopher Zulawski. In November 2011, the findings of NP Zulawski's physical examination were unremarkable. In April

2012, Dr. Murray noted that plaintiff was "currently off work from his usual construction duties as the physical activity associated with his work duties was aggravating his pain significantly." T. 260. In August 2012, NP Zulawski noted that plaintiff reported "an overall decrease in pain severity." T. 257. In October 2012, NP Zulawski noted that plaintiff's condition was "relatively unchanged," and he was referred to pain management. T. 302.

On January 18, 2013, Dr. Murray noted decreased ROM of the lumbar and thoracic spine. He also made a detailed assessment of plaintiff's work-related limitations, stating that plaintiff's back pain was "aggravated by lifting, bending, twisting, pushing or pulling or by a prolonged fixed posture." T. 306. According to Dr. Murray, plaintiff "should not be forced to undertake jobs requiring prolonged fixed postures without the ability to change position. He should not be allowed to work in situations where there is significant lifting, bending, twisting, pushing or pulling." Id.

Also on January 18, 2013, Dr. Murray completed a medical source statement of the ability to do physical work-related activities, and opined that plaintiff could occasionally lift 10 pounds; frequently lift less than 10 pounds; stand and/or walk for less than two hours in an eight-hour workday; must periodically alternate sitting and standing to relieve pain or discomfort; and was limited in pushing and pulling in the upper and lower

extremities. Dr. Murray opined that these limitations were due to chronic mid and low back pain made worse by pushing, pulling, and twisting, as well as prolonged fixed postures. According to Dr. Murray, plaintiff could occasionally balance, kneel, crouch, and stoop, but never climb or crawl. Quite significantly, that same day, Dr. Murray completed a medical examination for employability assessment, in which he stated that plaintiff's impairments were expected to last four to six months from the present date, January 18, 2013. He also completed a form for the Wyoming County Department of Social Services, in which he opined that plaintiff should be "provided freedom to change positions every 15-30 minutes." T. 280.

Dr. Hongbio Liu completed a consulting internal medicine examination, at the request of the state agency, dated November 2012. On physical examination, plaintiff could squat at 90 percent and had difficulty with a heel-toe walk because of low back pain. Musculoskelatal exam was essentially unremarkable, with normal findings in spinal ROM except for a limited lumbar spine rotation to 20 degrees (normal ROM is 45 degrees). Plaintiff had a negative straight leg raise ("SLR") bilaterally and full ROM of all extremities. Dr. Liu opined that plaintiff had "mild limitations for prolonged walking, bending, kneeling, and overhead reaching." T. 272.

The ALJ gave Dr. Liu's consulting opinion some weight, but found that his opinion "fail[ed] to adequately consider [plaintiff's] subjective complaints which show[ed] that he [was]

more than mildly impaired." T. 17. The ALJ gave "less weight" to Dr. Murray's January 2013 medical statement, noting that it described limitations estimated to last "for an approximate six-month period." T. 18. The ALJ found that Dr. Murray's opinion "suggest[ed] greater limits than [plaintiff] himself conceded and was for a limited period of time, although an opportunity to change position every 30 minutes was included [in the RFC finding] as this need to change position is supported by the record and testimony." Id.

The ALJ's RFC assessment was supported by substantial evidence. "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (citing Richardson v. Perales, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")). Plaintiff's main argument is that, because the ALJ's RFC finding does not directly track any one medical opinion, it is unsupported by substantial evidence. However, like in Matta, the ALJ here considered the entire medical record and resolved conflicting evidence in an RFC finding which was consistent with that medical record.

As discussed above, plaintiff's physical examinations over time were essentially unremarkable, with the most recent treatment

notes indicating that he reported a decrease in his pain symptoms. Consulting examiner Dr. Liu found that plaintiff had only mild limitations. Treating neurologist Dr. Murray opined that plaintiff's symptoms would last only four to six months beyond the January 2013 date of his opinion, thus indicating that plaintiff did not suffer from any impairment which would cause a disability within the meaning of the regulations. See 20 C.F.R. §§ 404.1509, 416.909 (requiring that impairment "must have lasted or must be expected to last for a continuous period of at least 12 months").[1] Plaintiff's own testimony, as the ALJ noted, indicated that he was not as limited as Dr. Murray's opinions suggested. Plaintiff testified that he drove to his hearing, which was about an hour drive, without stopping; he could walk 100 yards before needing to "stop and stretch" (T. 32); and he could lift about 10 to 15 pounds on an average day.

Considering the complete administrative record, the Court concludes that the ALJ's RFC finding was supported by substantial evidence. The ALJ was entitled to credit certain portions of Dr. Murray's treating physician opinion, while rejecting those that were not substantiated by the clinical findings in the record. See Gray v. Colvin, 2015 WL 5005755, *5 (W.D.N.Y. Aug. 20, 2015) ("The ALJ was within his discretion to accept certain portions of [the treating physician's] opinion, but reject those that were not

---

[1] Dr. Murray, who began treating plaintiff in 2009, did not clearly indicate that the specific limitations resulting from plaintiff's impairments had already lasted twelve months, although he did note that plaintiff was first diagnosed with physical impairment in 2000.

supported by her own treatment notes or other substantial record evidence.") (citing <u>Pavia v. Colvin</u>, 2015 WL 4644537, *4 (W.D.N.Y. Aug. 4, 2015) (noting that it is "within the province of the ALJ to credit portions of a treating physician's report while declining to accept other portions of the same report") (citing <u>Veino v. Barnhart</u>, 312 F.3d 578, 588 (2d Cir. 2002)). The ALJ's specific 30-minute sit/stand limitation was a reasonable adoption of Dr. Murray's opinion, which found that plaintiff would have to change positions every 15-30 minutes. The finding was supported by substantial evidence, which evidence indicated that plaintiff's physical examinations were largely normal except for some tenderness and decreased ranges of motion, and that results of plaintiff's imaging tests were benign and of little clinical significance. The finding also reasonably reflected plaintiff's own testimony regarding his own limitations. See, e.g., <u>Jaskiewicz v. Comm'r of Soc. Sec.</u>, 2010 WL 5138477, *6 (N.D.N.Y. Dec. 10, 2010) ("The medical evidence and plaintiff's own testimony ... support the ALJ's RFC determination. Accordingly, [plaintiff]'s contention that the ALJ created his own medical opinion inconsistent with the record is rejected."). The Court will thus not disturb the RFC finding.

### B.   Credibility

Plaintiff contends that the ALJ erroneously assessed his credibility. Upon review of the record and the ALJ's decision, the Court concludes that the ALJ properly applied the two-step analysis in assessing plaintiff's credibility. See 20 C.F.R. §§ 404.1529,

416.929. Moreover, the ALJ's finding that plaintiff was not fully credible is supported by substantial evidence. As discussed above, the ALJ's decision included a summary of plaintiff's testimony regarding his daily activities, as well as his subjective complaints of pain. The ALJ's discussion actually credited many of plaintiff's reports, such as his testimony that he could lift 10 to 15 pounds on an average day, had driven to the hearing without stopping, and could walk 100 yards before needing to take a break.

In the context of his discussion of the record, the ALJ cited, among other sources, 20 C.F.R. §§ 404.1529, 416.929, and SSR 96-7p. The subsequent discussion, which incorporates a review of the testimony, indicates that the ALJ used the proper standard in assessing credibility, especially in light of the fact that the ALJ cited relevant authorities in that regard. See Britt v. Astrue, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility); Judelsohn v. Astrue, 2012 WL 2401587, *6 (W.D.N.Y. June 25, 2012) ("Failure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record.").

**V.   Conclusion**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Doc. 6) is denied and the Commissioner's motion (Doc. 8) is granted. The ALJ's finding that plaintiff was not

disabled is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**


                                      **S/Michael A. Telesca**
                                      HON. MICHAEL A. TELESCA
                                      United States District Judge

Dated:     March 15, 2016
             Rochester, New York.